UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:17-cv-00246-FDW

| | |
|---|---|
| SHERMAN MICHAEL WILSON, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>) | ORDER |

THIS MATTER is before the Court on Plaintiff's Motion for Summary Judgment (Doc. No. 9) and Defendant's Motion for Summary Judgment (Doc. No.12). Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on her application for Disability Insurance Benefits under 42 U.S.C. § 405(g)[1]. For the following reasons, Plaintiff's Motion for Summary Judgment is DENIED, and Defendant's Motion for Summary Judgment is GRANTED. Accordingly, the Commissioner's decision is AFFIRMED.

## I.  BACKGROUND

Plaintiff filed an application for Title XVI benefits on August 6, 2013, alleging disability since May 10, 2013. (Tr. 169). Plaintiff's application was denied initially on April 1, 2014 (Tr. 100), and upon reconsideration on July 1, 2014, it was denied again. (Tr. 100, 115). Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which was conducted on July

---

[1] "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2016).

1

28, 2016. (Tr. 120, 35). After the hearing, the ALJ denied Plaintiff's application in a written decision dated August 25, 2016. (Tr. 14).

In reaching his decision, the ALJ used the five-step sequential evaluation process for the evaluation of disability claims under the Social Security Act ("the Act"). (Tr. 18-19); 20 C.F.R. § 416.920(a)(4) (2017). At the first step, the ALJ determined Plaintiff had not engaged in substantial gainful activity since the filing of his application on August 6, 2013. (Tr. 19). At step two, the ALJ determined Plaintiff had several "severe impairments," as defined in 20 C.F.R. § 416.920(c), including "mental health impairment diagnosed alternatively as schizoaffective disorder, bipolar type, schizophrenia, post-traumatic stress disorder (PTSD), anxiety disorder, and bipolar disorder, mixed." (Tr. 19); 20 C.F.R. § 416.920(c) ("You must have a severe impairment. If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled."). At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments ("the Listings") found in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19-20).

The ALJ determined Plaintiff could still perform "a full range of work at all exertional levels" despite his impairments. (Tr. 21). The ALJ noted in his residual functional capacity ("RFC") analysis, however, that Plaintiff was limited to the following nonexertional limitations:

> [C]apable of simple, routine and repetitive tasks for two hour intervals throughout the day at a non-production pace, no more than occasional public contact, no more than occasional contact with supervisors, no more than occasional contact with co-workers and restricted to work in a stable work environment, that does not have frequent changes.

(Tr. 21). Also at step four, the ALJ found Plaintiff could not perform any of his past relevant work. (Tr. 29). At step five, the ALJ determined in light of Plaintiff's RFC, age, education, work experience, and the Vocational Expert's ("VE") testimony, Plaintiff could perform jobs existing in significant numbers in the national economy, specifically kitchen helper, sweeper/cleaner, and automobile detailer. (Tr. 29-30). Accordingly, the ALJ decided Plaintiff was not disabled under the Act. (Tr. 30).

After receiving the ALJ's decision, Plaintiff subsequently requested a review of the ALJ's decision, which was denied by the Appeals Council on July 8, 2017. (Tr. 1). Therefore, the ALJ's decision became the final decision of the Commissioner. Plaintiff brought the suit before the Court to challenge the Commissioner's decision, and this case is now ripe for judicial review under 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code provides judicial review of the Social Security Commissioner's denial of social security benefits. When examining a disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence. 42 U.S.C. § 405(g); Westmoreland Coal Co., Inc. v. Cochran, 718 F.3d 319, 322 (4th Cir. 2013); Bird v. Comm'r of Soc. Sec. Admin., 699 F.3d 337, 340 (4th Cir. 2012). A reviewing court may not re-weigh conflicting evidence or make credibility determinations because "it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Secretary if his decision is supported by substantial evidence." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 2013).

3

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (alteration and internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Courts do not reweigh evidence or make credibility determinations in evaluating whether a decision is supported by substantial evidence; "[w]here conflicting evidence allows reasonable minds to differ," courts defer to the ALJ's decision. Johnson, 434 F.3d at 653.

"In order to establish entitlement to benefits, a claimant must provide evidence of a medically determinable impairment that precludes returning to past relevant work and adjustment to other work." Flesher v. Berryhill, 697 F. App'x 212 (4th Cir. 2017) (citing 20 C.F.R. §§ 404.1508, 404.1520(g)). In evaluating a disability claim, the Commissioner uses a five-step process. 20 C.F.R. § 404.1520. Pursuant to this five-step process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and (5) if not, could perform any other work in the national economy. Id.; see also Lewis v. Berryhill, 858 F.3d 858, 861 (4th Cir. 2017) (citing Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015)); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. See Lewis, 858 F.3d at 861; Monroe v. Colvin, 826 F.3d 176, 179–80 (4th Cir. 2016).

The Fourth Circuit has held:

> If the claimant fails to demonstrate she has a disability that meets or medically equals a listed impairment at step three, the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four, which is "the most [the claimant] can still do despite [her physical and mental] limitations [that affect h[er] ability to work]."

Lewis, 858 F.3d at 861-62 (quoting 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)) (alterations in original). In Lewis, the Fourth Circuit explained the considerations applied before moving to step four:

> [The RFC] determination requires the ALJ to "first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions listed in the regulations." Mascio, 780 F.3d at 636 (internal quotations omitted); see also SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Once the function-by-function analysis is complete, an ALJ may define the claimant's RFC "in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96-8p, 1996 WL 374184, at *1. See generally 20 C.F.R. §§ 404.1567, 416.967 (defining "sedentary, light, medium, heavy, and very heavy" exertional requirements of work).
>
> When assessing the claimant's RFC, the ALJ must examine "all of [the claimant's] medically determinable impairments of which [the ALJ is] aware," 20 C.F.R. §§ 404.1525(a)(2), 416.925(a)(2), "including those not labeled severe at step two." Mascio, 780 F.3d at 635. In addition, he must "consider all [the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," 20 C.F.R. §§ 404.1529(a), 416.929(a). "When the medical signs or laboratory findings show that [the claimant has] a medically determinable impairment(s) that could reasonably be expected to produce [her] symptoms, such as pain, [the ALJ] must then evaluate the intensity and persistence of [the claimant's] symptoms so that [the ALJ] can determine how [her] symptoms limit [her] capacity for work." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1).

Lewis, 858 F.3d at 862.

Proceeding to step four, the burden remains with the claimant to show he or she is unable to perform past work. Mascio, 780 F.3d at 635. If the claimant meets their burden as to past work, the ALJ proceeds to step five.

5

> "At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that 'exists in significant numbers in the national economy,' considering the claimant's residual functional capacity, age, education, and work experience." [Mascio, 780 F.3d at 635 (quoting 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(2), 416.1429)]. "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." Id.

Lewis, 858 F.3d at 862. If the Commissioner meets this burden in step five, the claimant is deemed not disabled, and the benefits application is denied. Id.

### III. ANALYSIS

Here, Plaintiff alleges the ALJ erred in two ways: (1) the ALJ erred in relying on VE testimony that appeared to conflict with the DOT, and (2) the RFC finding was improper because it did not explain how the ALJ found Plaintiff able to perform tasks for two hour intervals of time (Doc. No. 10, p. 4-5). The Court addresses each argument in turn.

#### A. Apparent Conflict Between VE Testimony and the DOT

Plaintiff's first assignment of error is "[t]he ALJ here accepted testimony from the vocational witness that appears to conflict with the DOT yet he failed to obtain an explanation from the vocational witness" (Doc. No. 10, p. 5). Plaintiff argues the ALJ did not meet his affirmative duty to "[i]dentify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs . . . and information in the Dictionary of Occupational Titles (DOT) . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p, 2000 WL 1898704, at *1 (Dec. 4, 2000); (Doc. No. 10, p. 6-7). Specifically, Plaintiff contends the ALJ failed to address an apparent conflict in three ways: first, failure to consider O*Net statistics regarding the work pace of the jobs suggested during VE testimony; second, failure to consider O*Net statistics regarding the frequency of contact with

6

others while performing those jobs; and third, failure adequately resolve an alleged Reasoning Level conflict between the VE testimony and the DOT.

SSR 00-4p makes clear "[w]hen a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and the information provided in the DOT." SSR 00-4p, at *4. The Fourth Circuit has made clear "an ALJ has not fulfilled his affirmative duty 'merely because the [vocational expert] responds 'yes' when asked if her testimony is consistent with the [Dictionary].'" Pearson, 810 F.3d at 208-09 (quoting Moore v. Colvin, 769 F.3d 987, 990 (8th Cir. 2014) (alterations, omissions, and emphasis in original)). Accordingly, "[t]he ALJ independently must identify conflicts between the expert's testimony and the *Dictionary*." Id. (emphasis added).

### 1. Non-Production Pace and Contact with Others

Thus, if the ALJ has no duty to resolve conflicts between the O*Net and VE testimony, there can be no apparent conflict warranting remand based on that alone. Plaintiff attempts to create a conflict by referencing the O*Net. The ALJ was not required to identify or discuss conflicts between O*Net and VE testimony. See SSR 00-4p, 2000 WL 1898704, at *2-3 (stating in making disability determinations, the DOT is the primary source, as well as its companion publication, the SCO). The Court has consistently rejected claimants' reliance on O*Net as the basis for a conflict between VE's testimony and the DOT. Bushaw v. Berryhill, No. 1:17-cv-00192-FDW, 2018 WL 1972711, at *5 (W.D.N.C. Apr. 26, 2018) (noting SSR 00-4p "contains no mention of O*Net" and joining "other district courts in rejecting Plaintiff's argument and request to impose an obligation on the ALJ unsupported by law.") (collecting cases); Street v. Berryhill,

No. 1:17-cv-00204-FDW, 2018 WL 1935866, at *7 (W.D.N.C. Apr. 24, 2018) ("[A]s previously discussed an ALJ is not required to resolve conflicts between the VE's testimony and publications other than the DOT. As such, the Court finds no apparent conflict."); Rinehart v. Berryhill, No. 3:17CV425-GCM, 2018 BL 142970, at *6 (W.D.N.C. Apr. 18, 2018) ("Agency regulations and rulings currently identify the DOT as a source of reliable job information for determining disability claims and as suitable for administrative notice. As such, the O*NET's characterization . . . is irrelevant." (citations omitted)); Reed v. Berryhill, No. 3:17-cv-574, 2018 BL 131625, at *4 (W.D.N.C. Apr. 12, 2018) ("[T]he DOT remains a source of reliable job information for determining disability claims and is suitable for administrative notice."); Campusano v. Berryhill, No. 3:17-cv-499-MOC, 2018 WL 1566332, at *3 (W.D.N.C. Mar. 30, 2018) ("[W]hile plaintiff claims that O*Net replaced the DOT, that appears not to be completely accurate . . . ."); Fender v. Berryhill, No. 1:17-cv-00041-RJC, 2018 WL 1536485, at *4 (W.D.N.C. Mar. 29, 2018) ("The Court does not believe that the ALJ has an affirmative duty to seek out and resolve apparent conflicts between the VE's testimony and O*Net, especially when the VE did not rely on O*Net for their conclusions.") (citing Nguyen v. Colvin, No. SACV 13-01338-DFM, 2014 WL 2207058, at *3 (C.D. Cal. May 28, 2014)); Rozelle v. Berryhill, No. 3:17-cv-00127-RJC, 2018 WL 1187781, at *4 (W.D.N.C. Mar. 7, 2018) ("Plaintiff cites no authority to support the proposition that the ALJ must discuss apparent conflicts between the VE testimony and O*Net.") (collecting cases). Other courts have taken a similar stance with regard to the decision that the O*Net is not a substitute for the DOT. See Spurlock v. Berryhill, No. 1:17CV411, 2018 WL 791302, at *8 (M.D.N.C. Feb. 8, 2018) (memorandum opinion and recommendation) ("[E]ven if the VE's testimony was in conflict with 0*NET [sic], there is no requirement that the VE's testimony comply with that database."

(quoting Malfer v. Colvin, Civ. No. 12-169J, 2013 WL 5375775, at *5 (W.D. Pa. Sept. 24, 2013)); see also Ryan v. Astrue, 650 F. Supp. 2d 207, 218 (N.D.N.Y. July 1, 2009) (holding the same); Willis v. Astrue, No. C08-1198-RSM, 2009 WL 1120027, at *3 (W.D. Wash. Apr. 24, 2009) ("Plaintiff fails to provide any support for a contention that the creation of the O-NET altered this requirement [reliance on the DOT].").

Plaintiff relies almost exclusively on O*Net statistics to support his contention that the ALJ erred by not resolving conflicts regarding the jobs suggested by the VE testimony and the pace at which Plaintiff can work and the extent to which he can have contact with supervisors, co-workers, and the public (Doc. No. 10, p. 7-10). Because the Court does not recognize the O*Net or its contents as creating a conflict between VE testimony and the DOT, Plaintiff must offer other evidence of conflict, which he does not do. As the Court finds there is no inconsistency to resolve, the ALJ made no error in this regard.

**2. Simple, Routine, and Repetitive Tasks**

The ALJ concluded Plaintiff is limited "to simple, routine, and repetitive tasks"; however, the ALJ accepted VE testimony stating Plaintiff can perform the job duties of a kitchen helper or automobile detailer, which both require a Reasoning Level of 2. (Tr. 21, 66). See also U.S. Dep't of Labor, Dictionary of Occupational Titles, 318.687-010 (4th ed. 1991), 1991 WL 672755; U.S. Dep't of Labor, Dictionary of Occupational Titles, 915.687-034 (4th ed. 1991), 1991 WL 687878. On the other hand, the sweeper/cleaner position suggested by the VE requires a Level 1 reasoning. U.S. Dep't of Labor, Dictionary of Occupational Titles, 389.683-010 (4th ed. 1991), 1991 WL 673279.

The Fourth Circuit, in an unpublished opinion, noted "there is an apparent conflict between an RFC that limits [a claimant] to one-to-two step instructions and GED Reasoning Code 2, which requires the ability to understand detailed instructions." Henderson v. Colvin, 643 F. App'x 273, 277 (4th Cir. 2016). Relying on its decision in Pearson, the Fourth Circuit determined the ALJ should have inquired further because "the VE's testimony did not provide substantial evidence that there was work that [the claimant] could do given his RFC. The VE did not explain the apparent conflict, and the VE's conclusory statement that a conflict did not exist was insufficient, and the ALJ did not inquire further." Id. As the court has noted, however, the Fourth Circuit has "no binding precedent" on this issue, nor is there "a general consensus in the case law of this district[] as to whether there is an apparent conflict between simple routine tasks and GED Level 3." Taylor v. Berryhill, No. 1:17-cv-290, 2018 WL 2418560, at *4 (W.D.N.C. May 29, 2018) (comparing cases in the Western District of North Carolina and finding different outcomes). In Taylor, the court noted the plaintiff in Henderson was limited to one- or two-step instructions as opposed to "simple, routine, repetitive work." Id. at *5. Similarly, the court has held Level 2 jobs do not conflict with "a limitation of simple, routine, repetitive work." Bethea v. Berryhill, No. 5:17-cv-145, 2018 WL 1567356, at *4 (W.D.N.C. Mar. 30, 2018) ("This and other courts agree that such a ranking [Level 2] does not imply an apparent conflict with simple, routine, repetitive work . . . .").

When considering the sufficient number of jobs in the national economy under step 5, the Fourth Circuit has held 110 jobs do not "constitute an insignificant number," and thus is substantial evidence to support a non-disability finding. Hicks v. Califano, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979). Moreover, when considering a harmless error argument, the court notes "even assuming

10

that the ALJ did err, any such error by the ALJ [is] harmless [if] remand would" cause a different outcome. Dover v. Astrue, No. 1:11CV120, 2012 WL 1416410, at *5 (W.D.N.C. Mar. 19, 2012).

Given the court's refusal to identify an "apparent conflict" when VE testimony suggests a Level 2 job for a claimant restricted to "simple, routine and repetitive" work, Plaintiff's argument fails. Unlike the plaintiff from Henderson, Plaintiff here is not restricted to solely one- or two-step tasks, see Henderson, 643 F. App'x at 276, but instead has the RFC to "perform a full range of work at all exertional levels but with . . . nonexertional limitations," specifically a two-hour limitation on tasks during the day, requiring a non-production pace, "no more than occasional contact with" supervisors or co-workers, and a stable work environment without frequent changes (Tr. 21).

Even if the court did consider this an apparent conflict, it would constitute harmless error. The third job suggested by the VE, sweeper/cleaner, demands only Reasoning Level 1. U.S. Dep't of Labor, Dictionary of Occupational Titles, 389.683-010 (4th ed. 1991), 1991 WL 673279. With respect to this position, the VE testimony revealed there are 2.1 million sweeper/cleaner positions nationally (Tr. 67). This number is sufficient to satisfy the Fourth Circuit's statement from Hicks, where only a relatively small number of jobs is required to satisfy substantial evidence for an ALJ to make his decision. Hicks, 600 F.2d at 1051 n. 2. Even if the ALJ did not consider the VE testimony that Plaintiff could perform the jobs of a kitchen helper or automobile detailer given his RFC, the number of sweeper/cleaner jobs satisfies a conclusion of not disabled.

**B. The ALJ's RFC Finding**

As his second assignment of error, Plaintiff argues the ALJ's RFC finding was flawed because the ALJ failed to "explain how . . . [Plaintiff] is able to perform tasks for two hour

intervals" (Doc. No. 10, p. 13-14).  More specifically, Plaintiff claims "[t]he ALJ failed to form a bridge from the evidence to the conclusion that [Plaintiff] is able to sustain concentration and pace for two-hour intervals of time" (Doc. No. 10, p. 15).

The Fourth Circuit requires when an ALJ conducts the RFC analysis, he must conduct a function-by-function analysis, including "'a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'"  Mascio, 780 F.3d at 636 (quoting SSR 96-8p, 1996 WL 362207 (July 2, 1996)).  The ALJ not only must make determinations and reach conclusions regarding the claimant's RFC, but when evaluating the evidence to make those conclusions, he must abide by the admonition, "[s]how your work."  Patterson, 846 F.3d at 663. Doing so allows the ALJ to "'build an accurate and logical bridge from the evidence to [the ALJ's] conclusion.'"  Monroe, 826 F.3d at 189 (quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).  Without this "bridge," a "reviewing court has no way of evaluating the basis for the ALJ's decision," and remand is usually the appropriate remedy.  Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

The Mascio court faced several issues it considered troubling, though two are relevant here. First, it determined the ALJ there failed to properly analyze the functions the claimant could perform in narrative form; instead, the ALJ's decision was conclusory in nature.  Mascio, 780 F.3d at 636-37.  Second, the ALJ's hypothetical question to the VE was too restricted.  Id. at 638 ("[A]n ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'") (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011).  While the ALJ does not

12

necessarily have to find a limitation affects a claimant's ability to work, the ALJ does need to explain why that would be the case. Id.

Here, the ALJ established a bridge between the evidence and the legal conclusions he reached. The ALJ undertook an extensive narrative description of the functions the claimant could still perform. (See generally Tr. 21-29). Much of this narrative discussion addressed the claimant's history of mental health problems and how his symptoms improved with appropriate medication. (E.g., Tr. 23). Moreover, the ALJ observed that Dr. Walter H. McNulty, "who had the opportunity to observe" Plaintiff, concluded:

> [I]n a work situation, the claimant would have mild difficulty understanding, retaining and following instructions due to distractibility and poor attention. Dr. McNulty further concluded that the claimant was moderately impaired in his ability to relate to coworkers and supervisors, tolerate stress and tolerate the stress and pressures associated with day-to-day work activity.

(Tr. 20, 24). The ALJ also noted "claimant's consistency and commitment to treatment" varied at times, and "claimant admitted that he did not like taking medications and convinced himself that he did not need medications to help manage his symptoms," despite the fact he self-reported some improvement with them. (Tr. 24-25, 23). Put simply, "the most important fact to note is that the claimant's symptoms are generally stable when he is compliant with treatment." (Tr. 25). During periods where Plaintiff was taking medication, his "memory, judgment and insight were intact," his "rate of thought was normal and thought content was logical," and showed "no evidence of hallucinations, delusions, [or] psychotic thoughts . . . ." (Tr. 26). Additionally, the ALJ observed Plaintiff:

> [R]eported that his daily activities involved helping his mother with household chores. He said he cooked and spent time with his wife. The claimant said that he needed reminders in order to attend to his hygiene and grooming needs but did not indicate he required any help with grooming. . . . [He] testified that [he] watches

13

video games, goes to a friend's house to listen to music and helps care for his disabled father. The claimant further testified that he helps his mother wash dishes and sits and talks to his father. The claimant said he spends a couple hours per week with his father. He further testified that he helps to take care of four dogs. These activities are consistent with the residual functional capacity above, and they show that claimant is capable of sustaining basic work activities.

(Tr. 27). Thus, the ALJ sufficiently used narrative form in analyzing the functions Plaintiff could perform, and had substantial evidence in reaching his determinations, specifically that Plaintiff could work for two-hour intervals at a time, at least while taking prescribed medication.

Second, the ALJ's questioning to the VE was consistent with the requirements of Mascio. Although Plaintiff contends the ALJ simply sought to "placate" the Court in his questioning of the VE, it is also clear the ALJ noted "hopefully this [form of questioning] is a small step in the right direction in terms of meeting the requirements of case law" (Doc. No. 10, p. 17; Tr. 66). Specifically, the ALJ questioned the VE about an RFC with

> [N]o exertional limitations; . . . capable of simple, routine, repetitive tasks for two hour intervals throughout the day at a non-production pace . . . . no more than occasional public contact; no more than occasional contact with supervisors; no more than occasional contact with coworkers; and a stable work environment, one that does not have frequent changes.

(Tr. 65-67). This hypothetical question goes far beyond the Mascio requirement of something more than "'simple, routine tasks or unskilled work.'" Mascio, 780 F.3d at 638 (quoting Winschel, 631 F.3d at 1180). The ALJ's decision is supported by substantial evidence and is consistent with the case law requirements of the Fourth Circuit and federal regulations.

14

## IV. CONCLUSION

For these reasons, Plaintiff's Motion for Summary Judgment (Doc. No. 9) is DENIED; Defendant's Motion for Summary Judgment (Doc. No. 12) is GRANTED; and the Commissioner's decision is AFFIRMED.

IT IS SO ORDERED.

Signed: June 26, 2018

Frank D. Whitney
Chief United States District Judge